UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TIMOTHY DEVENNY, Individually,

Plaintiff,

v.

LAKEWOOD FIRE DISTRICT 2, a
subdivision of the City of Lakewood;
FIRE CHIEF KEN SHARP, in his
individual and official capacities,

Defendants.

CASE NO. C 10-5002 KLS

ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT

The Defendants Lakewood Fire District 2 and Fire Chief Ken Sharp filed a Motion for

Summary Judgment requesting dismissal of all of Plaintiff's claims.  ECF No. 34.  The Plaintiff

filed his response (ECF No. 39) and Defendants their reply (ECF No. 42).

**PLAINTIFF'S CLAIMS**

Mr. Devenny was employed by the Lakewood Fire District 2 until his was terminated

from his job on April 2, 2009.  He brought this suit against the Defendants because of his

termination and alleges, in his First Amended Complaint (ECF No. 6), that the Defendants (1)

infringed his right to equal protection of the law in violation of the Fourteenth Amendment to the

1  United States Constitution, (2) deprived him of a property interest in violation of the Fourteenth

2  Amendment to the United States Constitution; and (3) discriminated against him on the basis of

3  disability in violation of the United States Americans with Disabilities Act of 1990.

4  **SUMMARY OF FACTS**

5        Timothy Devenny started his employment with the Defendant Lakewood Fire District 2

6  on January 7, 1991 and his employment was terminated on April 2, 2009.  On October 28, 1996

7  Mr. Devenny was assigned to the position of firefighter/paramedic.  In their Motion for

8  Summary Judgment, the defendants identify a number of performance issues they had with Mr.

9  Devenny in his capacity as a paramedic and in 2006 steps were taken to address those various

10  concerns.   Finally, on August 20, 2008 Assistant Chief Greg Hull advised Mr. Devenny, in a

11  memo of that date, that he was removing Mr. Devenny from the paramedic program effective

12  September 1, 2008.  ECF No. 36, Exh. UU.  Mr. Devenny subsequently requested to be removed

13  from the Paramedic Program as of midnight December 31, 2008.  ECF No. 36, Exh. VV.

14        In response to complaints regarding his performance as a paramedic, the Lakewood Fire

15  Department reassigned Devenny for retraining under the supervision of Lieutenant/Paramedic

16  Tom Renner.  Lt. Renner prepared a "list of expectations" which was signed by Mr. Devenny on

17  January 24, 2007.  On January 26, 2007 Lt. Renner document concerns regarding Mr. Devenny

18  smelling of alcohol while on duty.  ECF No. 36, Exh. W.  This concern was also discussed with

19  Mr. Devenny at a review held on March 1, 2007 with Mr. Devenny, Chief Hull, Lt. Tinsley and

20  Lt. Renner.  ECF No. 36, Exh. X.

21        Mr. Devenny received a letter from Assistant Chief Greg Hull on July 10, 2007 which

22  advised the Plaintiff of a proposed disciplinary action in the form of a written reprimand.  This

23  proposed disciplinary action was in response to Mr. Deveney's failure to report for work the

24  morning of July 10, 2007.  Battalion Chief Paul Tinsley called Mr. Devenny on July 9, 2007 to

1   see if he would be interested in a callback for overtime on July 10 at 8:00 a.m. for 24 hours.  Mr.

2   Devenny accepted the callback, according to Paul Tinsley, but then he failed to report for work

3   the following morning.  In a subsequent investigation, Mr. Devenny denied any knowledge of

4   having accepted a callback and thought he must have been asleep as he did not remember talking

5   to anyone.  Notes prepared by B.C. Peiffer state his suspicion that Mr. Devenny had been

6   drinking alcohol on July 9, 2007.  Mr. Devenny denied  consuming alcohol.

7          On May 23, 2008 Assistant Chief Greg Hull wrote a memo to Mr. Devenny regarding a

8   Final Disciplinary Action.  In that memo Assistant Chief Greg Hull made Mr. Devenny aware of

9   Hull's concerns regarding Mr. Devenny's lack of truthfulness.  In particular, Assistant Chief Hull

10   noted as follows:  "I cited 5 instances where I found you gave less than truthful answers.  I

11   continue to see a clear pattern of inappropriate statements followed by evasive answers, changing

12   answers, and half truths.  My final disciplinary action is to enforce the 10 day suspension,

13   followed by a move to a supervised position on an engine company for a period of two years.

14   You may respond to this disciplinary action in accordance with Article 20 of the collective

15   bargaining agreement."  ECF No. 36, Exh. RR.

16          On October 29, 2008 Mr. Devenny drove to work and also reported to work while under

17   the influence of alcohol.  Several LFD2 personnel documented the Plaintiff's slow and slurred

18   speech, dilated pupils, strange behavior, dry heaves and odor of alcohol.  His blood alcohol

19   content on that date was determined to be 0.26.   ECF  No. 36, Exhs. WW, XX and YY.  Mr.

20   Devenny admits that he "unwittingly" reported to work intoxicated on October 29, 2008.  ECF

21   No. 40.  It is unclear to the Court how one can "unwittingly" report to work intoxicated unless

22   the level of intoxication was very high – which in this case it was.  It is undisputed, however, that

23   he was highly intoxicated when he drove to and reported for work on that date.

24

Mr. Devenny completed a Diagnostic Investigation and Evaluation with Northwest Resources II, Inc. on October 31, 2008.  A copy of that evaluation, dated November 3, 2008, was addressed to Greg Hall and Timothy R. Devenny.  ECF No. 36, Exh. AAA.  It is noted, in the body of the report that the Plaintiff contacted Northwest Resources as referred by his Operations Chief, Greg Hall, and that the precipitating event that led to the assessment was "coming to work intoxicated"  with a  Blood Alcohol Level of .26.  Under the "Legal History" section of the report it was noted that Mr. Devenny had a prior DUI in 2006 and a Negligent Driving 2nd Degree in 2008.  With regard to the 2008 conviction, Mr. Devenny advised he just completed a two year deferred prosecution treatment program in September 2008 and that he was sober through the two year program.  However, in the "Alcohol/Drug History" section, Mr. Devenny reported that in the last six months he was "drinking Vodka, four to six drinks per occasion, two times per week."

The Clinical Director at Northwest Resources concluded his report by requiring Mr. Devenny to "maintain total abstinence from alcohol and all other non-prescribed mind-altering drugs from the date of the order through the duration of this treatment program."  ECF No. 36, Exh. AAA.  The treatment program was to consist of intensive outpatient treatment, a minimum of four to eight weeks, relapse prevention for twelve weeks and monthly monitoring follow up for the remainder of one year.

Also on October 31, 2008 Assistant Chief Greg Hull wrote a memo to Mr. Devenny regarding "Proposed Disciplinary Action" to include a 10 day suspension without pay and a "last chance" agreement  "containing specific stipulations that you will be held to, including, but not limited to drug/alcohol evaluation, treatment, and testing."  ECF No. 36, Exh. CCC.  This action was based "on the district's determination that you arrived late for work, with a blood alcohol level that was over three times the legal limit.  During the interview process with the President of

1   the Local 1488 and me, you blatantly lied about drinking and the events of the following

2   evening.  This proposed disciplinary action is in lieu of what I believe would be a very justifiable

3   and immediate termination of your employment for this behavior." *Id.*   The memo concluded by

4   advising Mr. Devenny that he could "respond to this proposed disciplinary action in accordance

5   with the provisions of the collective bargaining agreement." *Id.*

6        Mr. Devenny completed a 21 day in patient treatment program at Olalla Recovery Center.

7   He was admitted on November 1, and discharged on November 22, 2008.

8        On November 18, 2008 Fire Chief Ken Sharp issued the Final Disciplinary Action:

9        Based on our recent discussions with your union representation, I am
         issuing you a final disciplinary action in the form of a 5-day suspension without pay.
10       This five-day suspension will represent a total of 34 hours of shift duty.

11       This disciplinary action is enacted based on our investigation of your
         behavior on October 29, 2008.  Specifically, you reported for duty at Station
12       23 while highly intoxicated.

13       In accordance with our discussions, you have accepted this final disciplinary
         action and have agreed with the terms and conditions set forth in the last
14       chance agreement, along with waiving any further appeals.

15   ECF No. 36, Exh. DDD.

16       The Disciplinary Probation Last Chance Agreement shows a signature date of November

17   10, 2008 and was signed by Fire Chief Ken Sharp, Rick Snodgrass, President of the Union and

18   Tim Devenny.  ECF No. 36, EXH. EEE.  It is undisputed that Mr. Devenny signed the Last

19   chance Agreement on November 23, 2008 and that it was back dated to November 10, 2008.

20       In the second provision of the Last Chance Agreement, the parties' agreed that the

21   employer had the right to conduct alcohol testing "regularly, periodically and/or randomly.  The

22   parties agree that acceptable levels for such testing shall be determined during the evaluation

23   and/or treatment program.  The employee's failure of any such test and/or the employee's refusal

24

to submit to any alcohol testing required by the employer shall be considered a direct violation of this provision of the agreement." *Id.*

The last paragraph of the Last Chance Agreement reads as follows:

> It is understood and agreed by the parties executing this agreement that if the employee is found by the employer, in its sole discretion, to have violated any of the three provisions listed above and/or demonstrated any alcohol related behavior at any time during the future duration of his employment with this employer or any successor organization, he will be terminated by the employer and such termination shall be final and not subject to appeal.

On March 3, 2009 Greg Hull received a report from Lakeside-Milam Recovery Centers which stated that Mr. Devenny's progress in the program was "unsatisfactory."  It was noted that the testing on January 28, 2009 was dilute so he came in on January 30, 2009.  ECF No. 36, Exh. FFF.

On March 24, 2009 Mr. Devenny submitted a urine sample which tested and retested positive for alcohol.  ECF No. 36, Exhs. GGG and HHH.

On April 2, 2009 Ken Sharp, Fire Chief, wrote a memo to the Plaintiff regarding "Termination of Employment."  ECF No. 36, Exh. III.   The termination was based on Mr. Devenny's test of March 24, 2009 which indicated that the Plaintiff had consumed alcohol, "which constitutes a failure of such test."  Fire Chief Sharp concluded that the Plaintiff had violated the provisions of the last chance agreement and he was, therefore, terminating the Plaintiff from his employment with the district, effective immediately.

It is appropriate, at this point in the recitation of facts, to address the Defendants' Motion to Strike.  ECF No. 42.  The Defendants request this court strike the Plaintiff's opinion in Paragraph 10 of his Declaration (ECF No. 40) that sometime near the end of January 2009 he produced an unsatisfactory urine sample as a result of ingesting cold medication.  That motion is DENIED as the Court reads that statement not being made for the truth of the matter (that

1   ingesting cold medication caused an unsatisfactory urine test) but rather as a reason why Mr.

2   Devenny reached his conclusion that he only needed to comply with the Civil Service Rules and

3   Regulations.  The Court notes, however, that the evidence before the Court regarding an

4   unsatisfactory urine sample the end of January 2009 was that the urine sample was dilute and not

5   that it resulted in a positive test for the presence of alcohol.  ECF No. 36, Exh. FFF.

6          Next the Defendants request that the Court strike the statement Mr. Devenny attributes to

7   AC Hull as summarized in Paragraph 10.  This is clearly hearsay and it is offered for the truth of

8   the statement therefore the motion to strike is GRANTED.

9          The Court is next asked to strike statements attributed to Dr. Alleman as set forth in

10  Paragraph 12 of the Plaintiff's Declaration.  That request is GRANTED as it is clearly hearsay

11  offered for the truth of the matter.  Therefore, the following is stricken from consideration:

12  "Alleman informed me that ingestion of cold medication containing alcohol could stay in my

13  system for up to 80 hours and could cause a positive ETG test result."

14         Finally, the Defendants request the Court strike Exhibit 6 on the grounds that  the

15  document contains statements that are hearsay, there is no way to determine the reliability of

16  such statements and the Plaintiff has not provided proper evidentiary foundation to admit the

17  documents.  That motion is GRANTED.  However, even if the Court were to consider the

18  documents, there is no discussion in either one regarding ingestion of cold medication and results

19  of an EtG test nor does the letter from Dr. Alleman suggest that promethazine with codeine even

20  contains alcohol.

21         At the time the Plaintiff was terminated, his employment was governed by the Agreement

22  By and Between Lakewood Fire District 2 and Lakewood Professional Fire Fighters, Local 1488

23  – IAFF covering the period of January 1, 2008 to December 31, 2013 found at ECF No. 36, Exh.

24  H.  This Agreement differs, in many respects, from the Agreement in effect when the Plaintiff

1   was hired (see ECF No. 36, Exh. G).   In particular, Article 20 – Disciplinary Procedure no

2   longer references "Civil Service Rules and Regulations."  Rather, the Agreement states that "the

3   District has the right to discipline, temporarily lay off, or discharge employees as provided by the

4   laws of the State of Washington and the terms of this Agreement."   While the Plaintiff makes

5   reference in his Declaration (ECF No. 40, Exh. 3) to Rules and Regulations of the Civil Service

6   Commission, revised February 2001, he makes no showing that such rules were even applicable

7   to him.  Even if they were, "Section X, Maintaining Discipline" specifically provides for the

8   discharge of an employee whose "drunkenness" precludes the employee from properly

9   performing the functions and duties of any position under civil service." ECF No. 40, Exh. 3.

10         Mr. Devenny makes reference to his producing an unsatisfactory urine sample the end of

11   January 2009.  He asserts that this was a consequence of his ingesting cold medication.  The

12   Court notes, as discussed previously, that the urine sample the end of January 2009 was reported

13   as being diluted and there is no reference in that report to the presence of alcohol.  The report

14   noted that Mr. Devenny came in on January 30 to retest and there is no information before the

15   Court regarding the results of that retest.  Be that as it may, Mr. Devenny attempts to raise a

16   factual question by asserting that due to this unsatisfactory urine sample he did not know what an

17   acceptable level was for alcohol so he "concluded that I would not violate the alcohol testing

18   provision of the LCA as long as I conformed to the standard set by the Rules and Regulations of

19   the Commission regarding intoxicating liquors; this was clearly not a zero-tolerance policy."

20   ECF No. 40, ¶ 10.  The undersigned finds that this does not create a factual question for several

21   reasons.  First, the Last Chance Agreement specifically required an evaluation by Northwest

22   Resources and that evaluation required total abstinence.  The evaluation was addressed to the

23   Plaintiff and there is nothing unclear or ambiguous about that requirement.  Further, there is

24   nothing in the Last Chance Agreement that makes any reference whatsoever to the Civil Service

1  Rules and Regulations so there is no basis for Mr. Devenny to now claim that he decided the

2  Civil Service Rules and Regulations, based on his interpretation, governed the Last Chance

3  Agreement.

4       On April 2, 2009 Mr. Devenny was called into Fire Chief Ken Sharp's office and was

5  terminated from his employment.  He was also given a Notice of Termination (ECF No. 36, Exh.

6  III).   Prior to the meeting, Mr. Devenny did not know why he was called into the Fire Chief's

7  Office and was not given any union and/or attorney representation at the meeting.  He states he

8  was not given a pre-termination hearing and also was not given an opportunity to present any

9  exonerating evidence from Dr. Alleman.  He demanded that his case be presented to the Board,

10  the Commission and his Union but Fire Chief Sharp stated that pursuant to the Last Chance

11  Agreement he was not allowed to appeal the decision.   Mr. Devenny did not make any further

12  attempt to appeal the termination decision and subsequently filed this civil suit in federal court

13  on January 5, 2010.

14  **SUMMARY JUDGMENT STANDARD**

15       Summary judgment is proper where "the pleadings, depositions, answers to

16  interrogatories, and  admissions on file, together with the affidavits, if any, show that there is no

17  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

18  of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).  The

19  Court must draw all reasonable inferences in favor of the non-moving party.  *See F.D.I.C. v.*

20  *O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79

21  (1994).  The moving party has the burden of demonstrating the absence of a genuine issue of

22  material fact for trial.  *See Anderson,* 477 U.S. at 257.  Mere disagreement, or the bald assertion

23  that a genuine issue of material fact exists, no longer precludes the use of summary judgment.

24

1  *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466,

2  1468 (9th Cir. 1987).

3        Genuine factual issues are those for which the evidence is such that "a reasonable jury

4  could return a verdict for the non-moving party."  *Anderson,* 477 U.S. at 248.  Material facts are

5  those which might affect the outcome of the suit under governing law.  In ruling on summary

6  judgment, a court does not weigh evidence to determine the truth of the matter, but "only

7  determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.,* 41 F.3d 547, 549

8  (9th Cir. 1994)(citing *O'Melveny & Meyers,* 969 F.2d at 747).  Furthermore, conclusory or

9  speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment.

10  *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 60 F.3d 337, 345 (9th Cir. 1995).

11  Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue

12  in summary judgment motions.  *Id.* at 345: *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F.2d

13  665, 667 (9th Cir. 1980).

14                                   **DISCUSSION**

15

16  **ADA DISCRIMINATION CLAIM.**

17        The Defendants moved to dismiss the Plaintiff claim of violation of the American with

18  Disabilities Act.  In his first Amended Complaint the Plaintiff asserted a disability of alcoholism

19  and further alleged that "the selective discipline and subsequent termination action against Mr.

20  Devenny was deliberately based upon his disability of alcoholism."  ECF No. 6, p. 2.  For

21  purposes of their summary judgment motion only the Defendants conceded that the Plaintiff was

22  under a disability of alcoholism.  They asserted, however, that the Last Chance Agreement

23  requiring alcohol dependency treatment was a reasonable and appropriate accommodation and

24  that such Last Chance Agreements are enforceable and do not violate the ADA.

1   The court notes that Mr. Devenny did not address the allegation of ADA Discrimination

2   in his response brief.

3   Based on the undisputed facts, the Court finds that the Last Chance Agreement was a

4   reasonable accommodation to Mr. Devenny's alcoholism and that Mr. Devenny was terminated

5   of his alcoholism.  The Court therefore **GRANTS** the Defendants' motion to dismiss this claim.

6

7   **CIVIL RIGHTS VIOLATION – EQUAL PROTECTION.**

8   Mr. Devenny alleges the Defendants "deprived Plaintiff of his right to equal protection of

9   the law under the Fourteenth Amendment to the United States Constitution."  ECF No. 6, p. 12.

10  The Defendants request this Court dismiss this claim on the grounds that there is  no evidence

11  that the Plaintiff was treated differently than similarly situated individuals.  Mr. Devenny's

12  response to the motion does not mention his claim of equal protection nor does he present  any

13  evidence, by way of declaration, to support such a claim.  In fact, Mr. Devenny's declaration

14  makes no mention of other employees, much less similarly situated employees. The Court

15  therefore **GRANTS** the Defendants' motion to dismiss this claim.

16

17  **DUE PROCESS OF LAW.**

18  Mr. Devenny alleges that the Defendants "deprived Plaintiff of a property interest in his

19  permanent position of public employment, without due process of law, as guaranteed by the

20  Fourteenth Amendment to the United States Constitution."  ECF No. 6, p. 13.  This is, in fact,

21  the only issue defended by the Plaintiff in response to the Defendants' motion for summary

22  judgment.

23  Mr. Devenny asserts the Defendants violated his 42 U.S.C. § 1983 federal civil rights.

24  To succeed on such a claim, the Plaintiff must establish (1) that he was deprived of a right

secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law.  The Constitutional right asserted by Mr. Devenny is found in Section 1 of the Fourteenth Amendment to the U.S. Constitution which declares "… nor shall any State deprive any person of life, liberty, or property, without due process of law. …"

The Defendants do not contest the Plaintiff's assertion that he had a protected property interest in his job.  As such, they also agree that the Plaintiff was entitled to due process. However, they assert that Mr. Devenny was provided all the process he was due when he was initially advised by Assistant Chief Hull of the Proposed Disciplinary Action on October 31, 2008 and then, after having discussed the issue with the Plaintiff's union representative, was issued a Final Disciplinary Action on November 18, 2008.  It was made clear to Mr. Devenny that he could have been terminated for his appearing at work with a blood alcohol content three times the legal limit and that the proposed discipline was in lieu of that termination.

The Final Disciplinary Action, issued by Chief Hull, made it clear to Mr. Devenny that the discipline was based on his intoxication on October 29, 2008 and that the discipline included not only suspension without pay but also the Last Chance Agreement.

It is further undisputed that Mr. Devenny tested positive for alcohol on March 24, 2009. This positive test was a violation of the Last Chance Agreement as the acceptable level for testing, as determined in the Evaluation, was total abstinence.  This violation then triggered the disciplinary action that was a consequence of Mr. Devenny's coming to work under the influence of alcohol on October 29, 2008.  This was not a new form of misconduct that would then trigger new due process concerns.  Rather, as noted in his letter of termination and as agreed to by Mr. Devenny, if he violated the specific terms of the Last Chance Agreement "he will be terminated by the employer and such termination shall be final and not subject to appeal."

1    As noted by the Court in *Lizzio v. Department of the Army,* 534 F.3d 1376, 1385 (Fed.

2    Cir. 2008), "[a]lcohol use, however, was not a separate charge, but was merely the evidence

3    relied on by the FAA to demonstrate that petitioner had breached the "last chance" agreement."

4    Such is the case here with Mr. Devenny.  His confirmed consumption of alcohol breached his

5    last chance agreement.  This breach then allowed the employer to administer the earlier

6    suspended discipline, which, in this case, was termination.  *See Coca-Cola Bottling Company of*

7    *St. Louis v. AFL-CIO*, 959 F.2d 1438 (8th Cir. 1992).

8    Mr. Devenny also asserts that he should have been advised of his appeal rights which he

9    asserts  arise from violation of the Last Chance Agreement.  This Court finds that argument

10   unpersuasive.  The violation of the Last Chance Agreement, as discussed above, triggered the

11   disciplinary action that was a consequence of his coming to work highly intoxicated.  With

12   regard to that underlying action, Mr. Devenny was provided with notice of his rights and he

13   apparently pursued them as his union president actually signed off on the Last Chance

14   Agreement.  There is no "notice of appeal rights" associated with violation of the Last Chance

15   Agreement.  In fact, in the Agreement Mr. Devenny agreed to give up any rights of appeal he

16   may have.  He does not, however, present any argument or evidence that his waiver of appeal

17   rights in the Last Chance Agreement is not enforceable in his case.  The Court also notes,

18   however, that Mr. Devenny did not appeal his termination.

19   The undersigned concludes that Mr. Devenny was not deprived of his due process rights

20   when the Defendants enforced the Last Chance Agreement and terminated the Plaintiff from his

21   employment.  The Court, therefore, **GRANTS** the Defendants motion to dismiss this claim.

22

23

24

1

**CONCLUSION**

2              Based on the above, the Court hereby **GRANTS** the Defendants' Summary Judgment

3    Motion and all of the Plaintiff's claims are hereby **DISMISSED.**

4              DATED this 25th day of February, 2011.

5

6                                                          Karen L. Strombom
                                                           United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Order Granting Motion for
Summary Judgment                    15